**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**


| | | |
|---|---|---|
| **ALVIN H. WALKER,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **5:08-CV-00452 (CAR)** |
| | : | |
| **PUTNAM COUNTY, GEORGIA,** | : | |
| **PUTNAM COUNTY BOARD OF** | : | |
| **COMMISSIONERS - HOWARD** | : | |
| **McMICHAEL, BILLY WEBSTER,** | : | |
| **JANIE REID AND BOB LANDLOUR,** | : | |
| **all in their individual and official** | : | |
| **capacities, respectively, and** | : | |
| **HELEN CARNES in her individual and** | : | |
| **official capacity, respectively, as** | : | |
| **County Manager,** | : | |
| | : | |
| **Defendants.** | : | |

_____

***ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT***

Before the Court is a Motion for Summary Judgment [Doc. 21] submitted by Defendants Putnam County Georgia, et al.  Plaintiff Alvin H. Walker filed a Response [Doc. 22] to the Motion and Defendants replied [Doc. 27].  Plaintiff resigned his job with the county and filed various claims for discrimination arising out of leave he took due to failing eyesight.  Defendants have shown that Plaintiff's position was eliminated for a legitimate business reason.  Plaintiff has not met his burden of production to show either that his decision to resign was involuntary or that his separation was a pretext for unlawful discrimination.  Because Plaintiff has failed to create a genuine issue of material fact on any of his claims, Defendants' Motion for Summary Judgment is **GRANTED**.

## BACKGROUND

Plaintiff Alvin H. Walker, a black male over the age of forty, was employed by Defendant Putnam County from April 1997 until April 13, 2007, as a Traffic Maintenance Crew Leader. Complaint, ¶¶ 5-10; Dep. of Helen J. Carnes, 22:13-23:11, Ex. 2 (Carnes Dep.). Plaintiff took an unannounced medical leave of absence in February 2007 to have glaucoma surgery in an attempt to restore vision to his right eye. Cataracts had grown over both of his eyes causing blindness in his left eye as well. Dep. of Alvin H. Walker, 16:18-17:24, 21:12-23 (Walker Dep.). He chose not to have either cataract removed at that time. Id.

Plaintiff did not notify anyone with the County in advance that he would need an extended medical leave. Walker Dep., 58:5-60:9. He did not later provide documentation in support of any entitlement under the Family and Medical Leave Act. Id.; Carnes Dep., 31:25-32:9. Plaintiff had already exhausted his annual sick leave and vacation time by early March 2007. Walker Dep., 30, 58:21-23; Carnes Dep., 37:4-9.

Not until March 1, 2007, did Plaintiff inform Jack Griffith, the Public Works Director and his supervisor, that he remained unable to drive to and from work due to his failing eyesight. Walker Dep., 33:1-35:20. Plaintiff told Griffith that he would not be able to return to work unless his vision improved. Id. He asked Griffith "to get with [County Manager Helen J.] Carnes about what [his] options might be" in the event that he could no longer work. Id.

During Plaintiff's absence and in the face of a mandate by the County's elected officials to cut costs, Carnes eliminated his Crew Leader position in the Public Works Department. Carnes Dep., 15:21-16:20. The decision came after Plaintiff told Carnes by phone on March 6, 2007, of his continuing inability to work. Id.; Walker Dep., 36:9-37:16. Carnes says Plaintiff quit after he told her he was legally blind and could no longer drive. Carnes Dep., 15:10-19.

Plaintiff says Carnes indicated that he could not continue working for the county if he could not drive. Walker Dep., 40:11-12. He was required to drive a utility truck as part of his daily responsibilities on the job. Carnes Dep., Ex. 3.

Plaintiff gradually recovered some vision in his right eye, and his physician released him to return to work on April 1, 2007. Walker Dep., 40:25-41:7, Carnes Dep., Ex. 1. When Plaintiff provided his medical release to Carnes some time after March 20, 2007, and asked to be reinstated, she offered him a position in the Animal Control Department. Walker Dep., 41:11-15, Ex. 6. The new position provided a slightly higher wage than Plaintiff had earned in the Public Works Department. Id. at 43:3-5, Ex. 6. A letter dated March 29, 2007, contained the offer, which remained open for two weeks until April 13, 2007. Id. at 41:16-43:11, Ex. 6.

On April 13, 2007, Plaintiff met with Carnes and declined the new position based on his belief that he could not perform the duties of the Animal Control job. Carnes Dep., 22:13-21; Walker Dep., 48:19-49:13. In addition, Plaintiff indicated that he soon expected to receive a full disability rating from the Veterans Administration, which already classified him as 80 percent disabled. Carnes Dep., 22:13-21; Walker Dep., 48:19-49:13. Plaintiff's employment with the County ended immediately following the April 13 meeting as noted on a separation letter provided to him that day. Carnes Dep., Ex. 2. The letter states that Plaintiff resigned. Id.

Plaintiff claims he could not perform in the Animal Control job based in part on its description, which indicates that the job requires "exceptional eye/hand/foot coordination" and dealing with rabid animals. Carnes Dep., Ex. 4. The Traffic Maintenance position, however, required "manual dexterity" and involved tasks such as "operating post drivers" and removing tree limbs from roadways. Carnes Dep., Ex. 3. The Traffic Maintenance position was exclusively outdoors, while the Animal Control position involved desk work. Id.

Based on his "overall health along with [his] eyes," Plaintiff secured a 100 percent disability rating from the Veterans Administration shortly thereafter. Walker Dep., 23:4-24:22. He also began receiving Social Security disability benefits in July 2008. Id. In addition to his eye conditions, Plaintiff suffers from cardiovascular disease, high blood pressure, high cholesterol, post-traumatic stress disorder, and sarcoidosis–a disease of the internal organs. Id. at 24:14-22. Plaintiff argues that no court adjudicated his level of disability before or after his separation from the County. Walker Aff., ¶ 12. After undergoing experimental surgery in 2008, Plaintiff did recover some vision in his left eye and now can see well enough to drive. Id. at ¶ 14.

Prior to his official separation from the County, Plaintiff also applied for unemployment benefits on April 5, 2007. Walker Dep., 46:10-21. The Georgia Department of Labor awarded Plaintiff $249 for twenty-one weeks effective April 1, 2007. Id. at Ex. 5. The award was based on a finding that Plaintiff "quit [his] job because of health reasons" and had "discussed the situation with [his] employer and tried to find a way to remain employed." Id. The County did not contest this award and felt the findings accurately reflected Plaintiff's representations that he could not work because of his health. Carnes Dep., 23:18-24:2.

When Plaintiff left work in February 2007, Carnes assigned his duties as Crew Supervisor to the two remaining members of the Traffic Maintenance team: Richard Ludwig, a white male; and Curtis Harris, a black male. Walker Dep., 54:21-25; Carnes Dep. 18:7-10, 18:24-19:13. Harris later left the crew with an injury, leaving only Ludwig. Walker Dep., 57:8-16; Carnes Dep. 18:19-22. Defendant did not fill Plaintiff's former position as Crew Supervisor. Walker Dep., 57:5-7; Carnes Dep. 16:9-20, 18:21-22, 27:17-28:4. All of the functions of the Traffic Maintenance Crew that were once performed by three employees are now performed by

one, resulting in a significant financial savings to the County. Carnes Dep., 27:22-28:4.

Plaintiff claims, and Carnes disputes, that some of his former supervisory responsibilities are now handled by two employees who are not on the Traffic Maintenance Crew. Walker Dep., 55:16-56:10; Carnes Dep., 25:21-26:23. Regardless, both of these other employees worked for the Country prior to Plaintiff's departure. Id.; Walker Dep., 57:25-58:4. Nothing in the record indicates that their level of compensation or title changed as a result of newly acquired duties. Id.

Plaintiff has sued for i) disability discrimination, ii) age discrimination, iii) race and sex discrimination, iv) violations of his rights under the Family Medical Leave Act ("FMLA"), and v) intentional infliction of emotional distress.

## STANDARD OF REVIEW ON SUMMARY JUDGMENT

Summary judgment must be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Johnson v. Clifton, 74 F.3d 1087, 1090 (11th Cir. 1996). The substantive law applicable to the case determines which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Not all factual disputes render summary judgment inappropriate; only a genuine issue of material fact will defeat a properly supported motion for summary judgment. See Id. at 247-48. Thus, summary judgment may be granted if there is insufficient evidence for a reasonable jury to find for the nonmoving party or, in other words, if reasonable minds could not differ on the verdict. See Id. at 249-52.

In reviewing a motion for summary judgment, the Court must view the evidence and all justifiable inferences in the light most favorable to the nonmoving party, but the Court may not

make credibility determinations or weigh the evidence. See id. at 254-55; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

The movant carries the initial burden and must show the court that "an absence of evidence to support the nonmoving party's case" exists to sustain its motion. Celotex, 477 U.S. at 325. "Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The nonmoving party must then go beyond the pleadings and present specific evidence that raises a genuine issue of material fact (i.e., evidence that would support jury verdict), or otherwise show that the moving party is not entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(e); see also Celotex, 477 U.S. at 324-26. This evidence must consist of more than conclusory allegations or legal conclusions and may include affidavits, depositions, and admissions. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). "Mere conclusions and unsupported factual allegations, as well as affidavits based, in part, upon information and belief, rather than personal knowledge, are insufficient to withstand a motion for summary judgment." Ellis v. England, 432 F.3d 1321, 1327 (11th Cir. 2005). Summary judgment must be entered where "the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof." Celotex, 477 U.S. at 323.

In the employment discrimination context, unverifiable conjecture, unsupported opinions, and unsubstantiated allegations of coworkers cannot suffice as viable summary judgment evidence, especially where contradictory of highly credible and authenticated record evidence. See Bogle v. Orange County Bd. of County Comm'rs, 162 F.3d 653, 658-59 (11th Cir. 1998)

(rejecting plaintiff's unverifiable, anecdotal testimony about alleged comparators); Combs v. Plantation Patterns, 106 F.3d 1519, 1532 (11th Cir. 1997) (requiring plaintiff to introduce sufficient testimony to allow fact finder to disbelieve each of employer's proffered explanations to survive summary judgment). A district court does not need to "review all of the evidentiary materials on file," *sua sponte*, however, it "must ensure that the motion itself is supported by evidentiary materials" and, at the least, "must review all of the evidentiary materials submitted in support of the motion for summary judgment." 5800 SW 74th Ave. 363 F.3d at 1101-1102.

## DISCUSSION

I. Disability Discrimination Claim

     a. Elements of the prima facie case

To plead a disability discrimination claim under the ADA, Plaintiff must first present a prima facie case of disability discrimination. Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1193 (11th Cir. 2004). Plaintiff can establish a prima facie case by showing that: 1) he is disabled, 2) he is a qualified individual, and 3) he was subjected to unlawful discrimination because of his disability. Earl v. Mervyns, Inc., 207 F.3d 1361, 1365 (11th Cir. 2000).

The ADA defines the first element of the prima facie case, disability, as follows: "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2). Courts, with respect to this definition of disability, utilize a three-step assessment: 1) does the plaintiff have an impairment; 2) does the relied-upon life activity qualify as major life activity; and 3) does the impairment substantially limit the major life activity. Bragdon v. Abbott, 524 U.S. 624, 631 (1998).

The ADA defines a "qualified" individual as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions" of the job he holds or desires. 42 U.S.C. § 12111(8); Davis v. Fla. Power & Light, Co., 205 F.3d 1301, 1305 (11th Cir. 2000). If a qualified individual with a disability requires a reasonable accommodation to perform the essential functions of her job, then the ADA requires the employer to provide the accommodation unless the employer can demonstrate that doing so would constitute an undue hardship. 42 U.S.C. § 12112(b)(5)(A); Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1255 (11th Cir. 2001). An accommodation is reasonable and required, however, only if it enables the employee to perform the essential functions of his job. 29 C.F.R. § 1630.2(o)(1)(ii); Lucas, 257 F.3d at 1256. "Essential functions" are defined as the fundamental duties of a job that a disabled employee actually is required to perform. 29 C.F.R. § 1630.2(n)(2)(I).

In addition, a qualified individual with a disability is not entitled to the accommodation of his choice, but only to a reasonable accommodation. See Earl, 207 F.3d at 1367. Reasonable accommodations may include job restructuring, part-time or modified work schedules, acquisition or modification of equipment or devices, and reassignment to another position. 42 U.S.C. § 12111(9); 29 C.F.R. § 1630.2(o); Talavera v. School Bd. of Palm Beach County, 129 F.3d 1214, 1217 (11th Cir. 1997).

Absent direct evidence of discrimination, ADA claims are analyzed under the three-part test outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Durley v. APAC, Inc., 236 F.3d 651, 657 (11th Cir. 2000). Once a prima facie case has been established, Defendants may rebut it by articulating a legitimate, nondiscriminatory reason for the adverse employment action. Cleveland, 369 F.3d at 1193. If Defendants successfully rebut Plaintiff's prima facie

case, Plaintiff bears the burden of establishing that Defendants' reason is pretextual. Id.

    b. Legal analysis

Plaintiff's changing condition complicates the factual analysis in this case. He first told his supervisors that he could no longer work. Facing a budget crisis, Defendants eliminated the Traffic Maintenance position. When Plaintiff's vision later improved, he asked Defendants about returning to work but refused a new position in Animal Control. The record indicates that Plaintiff thereafter resigned. Now, after surgery restored vision to both of Plaintiff's eyes, he seeks through litigation to have his original position restored as well, despite having sought and received two forms of disability and unemployment benefits in the interim. As discussed below, however, the evidence submitted by Plaintiff fails to create a genuine issue of material fact under any conceivable avenue for relief. Plaintiff has not made out a prima facie case under the ADA, regardless of his level of disability.

    1. Plaintiff was not a "qualified individual" during his leave of absence.

After Plaintiff left for surgery in late February 2007 and prior to his medical release to return to work on April 1, 2007, Plaintiff was not a "qualified individual" for purposes of the ADA because he was unable to perform the "essential functions" of his job. Carnes testified that she made the decision to eliminate the Traffic Maintenance position on or about March 6, 2007, after Plaintiff represented to her that he could no longer work. Plaintiff has put nothing in the record to call into question the timing of this decision. By his own admission, he did not know before a doctor's visit on March 20, 2007, if he would ever be able to work for the County again.

Furthermore, Plaintiff does not dispute that until his medical release date of April 1, 2007, he was unable to perform the essential functions of the Traffic Maintenance position, which specifically included the ability to drive a service truck. Since one who cannot perform the essential functions of the job in question is not a "qualified individual" for purposes of the ADA, the elimination of the Traffic Maintenance position on or about March 6, 2007, cannot give rise to a claim under the ADA.

Even if Carnes only decided to eliminate the Traffic Maintenance position after learning that Plaintiff could return to work, Plaintiff remains unable to make out a prima facie case under the ADA. The undisputed record shows that Defendants responded on March 29, 2007, to news of Plaintiff's medical release with an immediate offer of a new position in Animal Control. The letter containing the offer provides conclusive proof that the Traffic Maintenance position had been eliminated by that date at the latest, which was before Plaintiff's doctor had released him to return to work. Since Plaintiff could not perform the essential duties of either position on March 29, 2007, he was not a qualified individual under the ADA.

2. Plaintiff claim fails regardless of his disability level after his medical release.

As of April 1, 2007, Plaintiff's status changed in two respects. His doctor released him to return to work, and although the Traffic Maintenance position no longer existed, he had an open offer of transfer to Animal Control. Nonetheless, any claims of disability discrimination by Plaintiff after that date fail whether he was not disabled, partially disabled, or totally disabled.

i. Without a disability, there is no ADA claim.

If Plaintiff was not disabled, he cannot make out the prima facie case for an ADA claim.

Plaintiff's doctor issued an unconditional medical release for him to return to work on April 1, 2007, with "no limitations." The release was not job-specific. Individuals attempting to prove disability status must submit evidence beyond a mere medical diagnosis of an impairment. See Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 198 (2002) (requiring for purposes of ADA that plaintiffs offer evidence that extent of limitation caused by their impairment is substantial). Plaintiff has not even produced medical evidence that he remained disabled after April 1, 2007, and he admits to having now recovered normal vision in both eyes. As such, Plaintiff has failed to make a prima facie showing that he was disabled.

### ii. Any continuing disability did not qualify Plaintiff for relief.

If, however, Plaintiff was disabled within the meaning of the ADA, he was not a qualified individual. First, Plaintiff has failed to make an adequate showing that he requested a reasonable accommodation. Second, requiring Defendants to keep the Traffic Maintenance position solely to accommodate Plaintiff's desire to return to that job would have placed an undue burden on Defendants. Third, although Defendants could have discharged Plaintiff after he changed his mind about not returning to work, Defendants instead went out of their way to transfer him to an open position, which reasonable accommodation he refused.

Most fundamentally, Plaintiff cannot challenge Defendants' actions on a failure to accommodate theory because he never identified and requested a specific, reasonable accommodation. Plaintiff bears the burden of identifying a reasonable accommodation. See Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1286 (11th Cir.1997); Willis v. Conopco, Inc., 108 F.3d 282, 283 (11th Cir.1997); Earl, 207 F.3d at 1366-68. Plaintiff must

make a specific demand for an accommodation in order to trigger Defendants' duty to provide a reasonable accommodation under the ADA. Gaston v. Bellingrath Gardens & Home, Inc., 167 F.3d 1361, 1363 (11th Cir. 1999). Plaintiff's only specific demand was that he be reinstated in the Traffic Maintenance position, which no longer existed. An employee is not entitled to the accommodation of his choice, but only to a reasonable accommodation. See Earl, 207 F.3d at 1367. Plaintiff's requested accommodation was unreasonable.

Granting Plaintiff's request to be reinstated in the Traffic Maintenance position, moreover, would have resulted in an undue hardship on Defendants. Even a reasonable request for accommodation that results in undue hardship for the employer is not actionable. See Earl, 207 F.3d at 1366. Defendants have produced evidence that the Traffic Maintenance position was eliminated in response to a budgetary hardship faced by the rural county. Defendants did not attempt to fill the position, which remains vacant. Plaintiff's request to be reinstated in the Traffic Maintenance position after its elimination out of legitimate financial considerations would have created an undue hardship for Defendants.

The ADA does not require an employer to reconstitute an eliminated position or create a new position that is identical in all respects. See 42 U.S.C.A. § 12111(9); Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 547 (4th Cir. 2006) (finding no right of restoration to previous position where company reorganization would have eliminated it regardless of intervening medical leave by employee who refused to apply for other vacant positions); Chiari v. City of League City, 920 F.2d 311, 318 (5th Cir. 1991) (finding no duty to create position for disabled employee). In fact, a transfer is an accommodation of last resort, made necessary only if accommodation in the employee's original position poses an undue hardship. EEOC

Interpretive Guidance, 29 C.F.R. Part 1630, App. § 1630.2(o). Defendants nevertheless made the transfer available to Plaintiff in a position that had already been publicly advertised.

The reassignment to Animal Control was, moreover, a reasonable accommodation based on its similarity to Plaintiff's original position. See, e.g., Rehrs v. Iams Co., 486 F.3d 353 (8th Cir. 2007) (requiring only that new position be comparable and imposing on plaintiff burden of showing that offered position is inferior to original position). The new position was comparable in all material respects to the old job. Both the Traffic Maintenance and Animal Control positions required driving a utility truck to various locations around the county and performing various manual tasks. That one job involved animals and the other involved road signs and fallen trees is of little consequence (In fact, Defendant admits he had to deal with animals on occasion in the original job). The Animal Control position paid a slightly higher wage and involved indoor work, while the former job was exclusively outdoors. Plaintiff would have enjoyed the same benefits package had he accepted the job. The reassignment was thus a reasonable accommodation.

Finally, an individual who rejects a reasonable accommodation necessary for performance of the job will no longer be considered a qualified individual. 29 C.F.R. § 1630.9(d). Plaintiff never assumed the Animal Control position. Although he admits that he could perform the essential functions of the Traffic Maintenance position, he simply concluded without ever attempting to take on any of the Animal Control responsibilities that he was incapable of doing the job. Plaintiff has made no showing that the essential functions of the two positions differed, and he did not pursue the Animal Control position long enough to show whether Defendants could have further accommodated any disparities in the two positions.

13

Since Plaintiff rejected the Animal Control job out of hand, he can no longer be considered a qualified individual, and his ADA claim fails as a matter of law.

As noted previously, a disabled employee has not earned the right to pick among reasonable accommodations because he would thereby gain greater rights than his non-disabled coworkers. Any other approach would require affirmative action on behalf of disabled employees at the expense of the non-disabled. Terrell v. USAir, 132 F.3d 621, 627 (11th Cir. 1998) ("The intent of the ADA is that an employer needs only to provide meaningful *equal* employment opportunities."); see also Daugherty v. City of El Paso, 56 F.3d 695, 700 (5th Cir. 1995) (The ADA "prohibits employment discrimination against qualified individuals with disabilities, no more and no less."); Rhodes v. Bob Florence Contractor, Inc., 890 F. Supp 960, 967 (D.Kan. 1995) ("[The plaintiff's] disability does not insulate him from the vagaries of the marketplace."). After Plaintiff had indicated he would not return to work, Defendants eliminated his original position. When Plaintiff's condition improved and he changed his mind about working, Defendants offered him a transfer without hesitation. As such, the law must not punish Defendants for their generosity in providing the most reasonable accommodation available at the time simply because Plaintiff refused to accept it. See, e.g., Lucas v. W. W. Grainger, Inc., 257 F.3d 1249, 1257 (11th Cir. 2001) ("Good deeds ought not be punished, and an employer who goes beyond the demands of the law to help a disabled employee incurs no legal obligation to continue doing so.").

iii. A total disability would have disqualified Plaintiff for relief.

If Plaintiff was totally disabled, he cannot make out the prima facie case for an ADA

claim.  An employee who cannot perform the essential functions of his job–even with reasonable accommodation–is not a "qualified individual" covered under the ADA. <u>Davis</u>, 205 F.3d at 1305.  Plaintiff admits he could not perform the essential functions of the Animal Control job. In addition, it is undisputed that Plaintiff sought and obtained unemployment benefits while the offer of transfer remained open.  The Veterans Administration and Social Security Administration have since both independently classified him as totally disabled.  Based on these facts, Defendants argue that the Court should bar Plaintiff's ADA claims on the basis of judicial estoppel.  The Eleventh Circuit, however, does not recognize per se judicial estoppel in this context. <u>Talavera</u>, 129 F.3d at 1220.  Instead, whether an employee will be judicially estopped from later bringing an ADA claim depends on specific statements made during the applications process for disability benefits. <u>Taylor v. Food World, Inc.</u>, 133 F.3d 1419, 1423 (11th Cir. 1998). The record before the Court does not provide a sufficient basis on which to invoke judicial estoppel under this rule.  Nevertheless, Plaintiff cannot prevail on his ADA claim if he was totally disabled at the time he sought a reasonable accommodation.


3. Plaintiff's claim cannot survive the burden-shifting analysis.

Even if Plaintiff could show that he was disabled and qualified for purposes of the ADA, he has not shown that Defendant discriminated against him because of his disability.  Absent direct evidence of discrimination, an employee may show discrimination under the ADA through use of the burden-shifting framework outlined in <u>McDonnell Douglas</u>. <u>Durley</u>, 236 F.3d at 657.

### i. Plaintiff has shown no adverse employment action.

The prima facie case requires Plaintiff to show an adverse employment action. The record, however, does not indicate that Plaintiff suffered an adverse employment action as a matter of law. See, e.g., McAdams v. Harvey, 141 Fed. App'x 802, 803 (11th Cir. 2005). Defendants offered Plaintiff a transfer, which he refused. Then, Plaintiff resigned his position. He has put nothing into the record that would give rise to a claim for constructive discharge. As such, it appears Plaintiff did not suffer an adverse employment action.

### ii. Plaintiff has not shown pretext.

Assuming an adverse employment action, however, Plaintiff's ADA claim still fails. An employer may rebut the prima facie case by articulating a legitimate, nondiscriminatory reason for the adverse employment action. Cleveland, 369 F.3d at 1193. If the employer successfully rebuts the prima facie case, the employee bears the burden of establishing that the reason offered is pretextual. Id. Defendants have indicated that Plaintiff's position was eliminated for financial reasons and that the County Manager only did so after Plaintiff indicated he would not return. Three years later, the position remains vacant, and a three-person crew has been reduced to a crew of one. In addition, Defendants' reassignment offer to Plaintiff after he changed his mind is strong evidence that no discriminatory intent aimed at Plaintiff motivated Defendant in eliminating the Traffic Maintenance position. That other less senior employees' positions were not eliminated first is not evidence of pretext. This fact only underscores the excess capacity on the Traffic Maintenance crew and Defendants' desire to keep working employees in their jobs. Finally, Plaintiff has put nothing in the record to indicate that Defendants treated a particular,

similarly situated employee any differently than him under similar circumstances. Defendants, therefore, have shown a legitimate, nondiscriminatory reason for eliminating Plaintiff's former position, and Plaintiff has not shown that this reason was pretextual. Plaintiff has not met his burden of production and cannot thereby make out a prima facie ADA claim.

## II. Age Discrimination Claim

In order to establish a prima facie case of age discrimination, Plaintiff must show that: 1) he was a member of the protected age group; 2) he was subjected to an adverse-employment decision; 3) he was qualified to do the job; and 4) he was replaced by a younger individual or treated less favorably than a similarly situated employee who is substantially younger. Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000).

It is undisputed that Plaintiff is in the protected age group. Even assuming Defendants subjected Plaintiff to an adverse employment action and he was qualified for the job at the time he resigned, he fails to make out a prima facie case under the ADEA. Defendants have shown that Plaintiff was never replaced and that the Traffic Maintenance position remains open. A crew of three has been reduced to one. Plaintiff has produced no credible evidence to dispute this fact or to show any similarly situated younger employee who received more favorable treatment. As such, Plaintiff's ADEA claim fails as a matter of law.

## III. Race Discrimination and Section 1983 Claims

Plaintiff cannot establish a prima facie case for either race discrimination or a violation of the equal protection clause of the Fourteenth Amendment. He fails to show any similarly

situated employee of another race who received more favorable treatment with respect to medical leave or job reassignment. To establish a prima facie case for race discrimination pursuant to 42 U.S.C. § 2000e *et seq* ("Title VII"), Plaintiff must show that:

1) he is a member of a protected class;
2) he was subject to an adverse employment action;
3) his managers treated similarly situated employees who were not members of his protected class more favorably or he was replaced by a person from outside his protected class; and
4) he was qualified for the job.

Gillis v. Georgia Dept. of Corr., 400 F.3d 883, 887 (11th Cir. 2005); See also Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008). "When Section 1983 is used as a parallel remedy for [a] violation . . . of Title VII, the elements of the two causes of action are the same." Underwood v. Perry County Comm'n, 431 F.3d 788, 793 (11th Cir. 2005).

Defendants do not dispute that Plaintiff, as a black male, is a member of a protected racial class. The Court has already discussed at length the issue of whether Plaintiff was qualified for the job at the time he resigned. All that bears repeating is that Plaintiff admits his belief that he could not perform the essential functions of the Animal Control position. Regardless, Plaintiff cannot prevail because he has not shown that a similarly situated employee of another race received more favorable treatment than he did under the same circumstances, or that he suffered an adverse employment action.

Plaintiff has not met his burden of production on this claim. The entire record in this case consists of the deposition of County Manager Helen J. Carnes, the deposition of Plaintiff, and two affidavits by Plaintiff. Therein, Plaintiff intimates that others may have received more favorable treatment on medical leave, but he points to nothing concrete and certainly nothing sufficient to create a genuine issue of material fact. As such, there is no credible record evidence

of any similarly situated employee who was treated differently under the same circumstances. Plaintiff's Title VII and Equal Protection claims, therefore, fail as a matter of law.

Defendants have shown a legitimate, nondiscriminatory reason for eliminating the Traffic Maintenance position. Elected officials had directed Carnes to cut costs, and based on her conversation with Plaintiff, she thought he would not return to work. Defendants, moreover, offered Plaintiff a position in Animal Control as soon as he changed his mind, which is further evidence Defendants lacked discriminatory intent since the position had been open to the public. Plaintiff has not shown any evidence of pretext, and the Traffic Maintenance position remains vacant over three years later.

In addition, Plaintiff has failed to show that Defendants subjected him to an adverse employment action. An employee who quits cannot establish an adverse employment action unless the employee submits evidence of constructive discharge. See, e.g., Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1241-44 (11th Cir. 2001). To establish constructive discharge, an employee must show that the work environment and conditions were so unbearable that a reasonable person would be compelled to resign. Virgo v. Riviera Beach Assocs., Ltd., 30 F.3d 1350, 1363 (11th Cir. 1994). Whether a transfer qualifies as adverse employment action requires an objective analysis. Doe v. Dekalb County Sch. Dist., 145 F.3d 1441, 1448-49 (11th Cir. 1998). Thus, those transfers that a reasonable person would view as a demotion because of a loss in pay, responsibility, or prestige are generally adverse, while those that are purely lateral are not. See id. at 1449-52.

Plaintiff resigned his county job on April 13, 2007, without assuming the Animal Control position that Defendants offered as a reassignment. As such, Plaintiff refused what essentially

appears to have been a lateral transfer to a higher paying job with the same benefits that was comparable to his original position. Since Plaintiff has produced no credible evidence to show that the transfer was the objective equivalent of a demotion, he cannot show that Defendants subjected him to an adverse employment action on a theory of constructive discharge.

## IV. FMLA claims

The FMLA entitles eligible employees to take up to twelve workweeks of leave during any twelve-month period because of "a serious health condition." 29 U.S.C. § 2612(a)(1)(D). When an employee's FMLA leave is foreseeable based on planned medical treatment, the employee must "provide the employer with not less than 30 days' notice, before the date the leave is to begin, of the employee's intention to take leave under such subparagraph." 29 U.S.C. § 2612(e)(2)(B). Where the leave is foreseeable, but "30 days notice is not practicable, such as because of a lack of knowledge of approximately when the leave will be required to begin, a change in circumstances, or a medical emergency, notice must be given as soon as practicable." 29 C.F.R. § 825.302(a). Finally, if the need for leave is unforeseeable, notice must be given "as soon as practicable under the facts and circumstances of the particular case," which generally requires notice within one or two working days after the need arises. Id. § 825.303(a).

An employee taking unforeseeable leave "need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed." 29 C.F.R. § 825.303(b). But the notice must be "sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave." Id. § 825.302(c). The Eleventh Circuit has held that "where an employee's need for FMLA leave is

unforeseeable, the employee need only provide her employer with notice sufficient to make the employer aware that her absence is due to a potentially FMLA-qualifying reason." Gay v. Gilman Paper Co., 125 F.3d 1432, 1436 (11th Cir. 1997).

Once an employee has met these notice requirements, the burden shifts to the employer who must then ascertain whether the employee's absence actually qualifies for FMLA protection. 29 C.F.R § 825.302(c) ("The employer will be expected to obtain any additional required information through informal means."). In order to verify eligibility, the employer may require that the employee furnish a medical certification of the need for leave from the employee's health care provider. 29 U.S.C. § 2614(c)(3)(A). When the leave is unforeseeable, the employer must allow at least fifteen calendar days for an employee to comply with a request for medical certification. 29 C.F.R. at § 825.305(b).

When an employee returns from covered leave, he is normally entitled to be restored to his former position or its equivalent. 29 U.S.C. § 2614(a)(1); Strickland v. Water Works & Sewer Bd., 239 F.3d 1199, 1208 (11th Cir. 2001). But the right to reinstatement is not absolute. Schaaf v. Smithkline Beecham Corp., 602 F.3d 1236, 1241 (11th Cir. 2010). Upon a showing that the employee would have been discharged had he not been on FMLA leave, the employer may deny reinstatement. Strickland, 239 F.3d at 1208; see 29 U.S.C. § 2614(a)(3) (right to reinstatement does not entitle employee under protection of FMLA to "any right, benefit, or position of employment other than any . . . to which the employee would have been entitled had the employee not taken the leave"). "[I]f an employer can show that it refused to reinstate the employee for a reason wholly unrelated to the FMLA leave, the employer is not liable." Strickland, 239 F.3d at 1208.

It is undisputed that Plaintiff suffered from a serious health condition. The record does not indicate how far in advance Plaintiff had scheduled his surgery date, but Plaintiff did not inform Defendants until after the surgery had taken place and only then after he attempted to drive to work. The Court will assume for purposes of this motion, however, that the need for leave was unforeseeable.

Plaintiff told his supervisor and Carnes that he would not be able to work indefinitely if his condition remained the same. He asked his supervisor to confer with Carnes to discuss his options. Five days later, he asked Carnes about retirement and donated sick time. Although Plaintiff admits he knew of FMLA, he never requested unpaid medical leave or specifically mentioned FMLA. Nonetheless, the Court will assume for purposes of this motion that Plaintiff provided notice sufficient to make Defendants aware that the absence was due to a potentially FMLA-qualifying reason.

Assuming proper notice, the burden shifted to Defendants to ascertain whether the Plaintiff's absence actually qualified for FMLA protection. According to Plaintiff, Carnes asked him to provide medical certification for his absence on March 6, 2007. This request was proper in order to make a FMLA determination. Plaintiff provided a document from his doctor dated March 20, 2007, which was within the required fifteen-day waiting period for compliance in cases of unforeseen absence.

At this point, there was no need for further investigation because the medical certification indicated that Plaintiff's doctor had released him without limitations to return to work on April 1, 2007. Plaintiff does not dispute either that Defendants would have allowed him to return to work on April 1, 2007, in the Animal Control position or that his employment with the county

only ended on April 13, 2007, after he refused to accept the new job. Thus, his employment with the county did not end because of his leave of absence in March, regardless of whether it qualified for FMLA protection. The only issues for the Court to consider under FMLA, therefore, are whether Plaintiff had a right to reinstatement in his original position and whether Defendants unlawfully discriminated against Plaintiff by transferring him to a new position in retaliation for his having taken covered leave.

Plaintiff had no absolute right to reinstatement in the Traffic Maintenance position because Defendants offered him an equivalent position in Animal Control. An employee who returns from covered leave is entitled to be restored to his former position or to another position that is equivalent in terms of benefits, pay, and other relevant conditions of employment. 29 U.S.C. § 2614(a)(1); Schaaf, 602 F.3d at 1241. As the Court has already discussed, the Animal Control position was equivalent to the Traffic Maintenance position in terms of benefits, pay, responsibilities, and physical requirements, such as driving and performing manual tasks. Plaintiff thus would have been restored to an equivalent position had he chosen to return to work and was denied no benefit to which he was otherwise entitled under FMLA.

In addition, Defendants have shown that the Traffic Maintenance position was eliminated for a reason wholly unrelated to Plaintiff's leave of absence. An employer may deny reinstatement upon a showing that the employee would have been discharged had he not been on FMLA leave. Strickland, 239 F.3d at 1208; see 29 U.S.C. § 2614(a)(3). FMLA leave, moreover, must be the proximate cause of any adverse employment action. Schaaf, 602 F.3d at 1242 (finding FMLA leave not proximate cause of demotion where leave merely allowed employer to discover information that would otherwise have prompted demotion).

Defendants have shown that the county faced a budgetary crisis, had been looking for ways to cut costs, and had identified excess capacity on the Traffic Maintenance crew. As such, Defendants eliminated the Traffic Maintenance position for legitimate business reasons. See, e.g., Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 547-51 (4th Cir. 2006) (finding summary judgment appropriate where employee's position was eliminated for legitimate business reasons while he was on FMLA leave and he was offered but refused the opportunity to apply for other positions upon his return).

Plaintiff has put forth no credible evidence to show that the leave was the proximate cause for eliminating the position even if the leave allowed Defendants to discover the excess capacity on the Traffic Maintenance crew. See Schaaf, 602 F.3d at 1242 ("[T]hat the FMLA leave allowed the employer to uncover prior deficiencies does not mean that the employee was fired *because of* the FMLA leave."). The Traffic Maintenance job has not been filled in over three years, which further confirms that the position was no longer needed and was eliminated for a reason unrelated to Plaintiff's leave. Nonetheless, Defendants did not deny reinstatement outright. Defendants offered Plaintiff a new, equivalent position in Animal Control. Plaintiff has therefore failed to show that Defendants interfered with his substantive rights under FMLA.

The only remaining FMLA cause of action Plaintiff might pursue is one for retaliation. Plaintiff cannot make out the prima facie case for FMLA retaliation, however, because it requires the Court to apply the now familiar McDonnell Douglas burden-shifting test. Strickland, 239 F.3d at 1207. As previously discussed in this order, Plaintiff has not met his burden of showing that the transfer qualified as an adverse employment action; Defendants have shown a legitimate, nondiscriminatory reason for eliminating the Traffic Control position related to

financial cutbacks; and Plaintiff has not shown that this reason was a pretext for discrimination.

V. Intentional Infliction of Emotional Distress Claim

Plaintiff has pled a state law claim for intentional infliction of emotional distress against the Putnam County Commissioners and the County Manager in both their individual and official capacities. All the named parties to this claim enjoy sovereign immunity under Georgia law in their official capacities. In addition, each is protected under the doctrine of official immunity to the extent Plaintiff sues them in their individual capacities. Thus, Plaintiff's claim for intentional infliction of emotional distress is barred as against all named parties.

The doctrine of sovereign immunity is covered in Art. I, Sec. II, Par. IX of the Georgia Constitution. Counties and other political subdivisions of the State of Georgia are absolutely immune from suit for tort liability, unless that immunity has been specifically waived pursuant to "an Act of the General Assembly which specifically provides that sovereign immunity is waived and the extent of such waiver." Gilbert v. Richardson, 264 Ga. 744, 747 (1994).

Sovereign immunity can only be waived by a legislative act. Woodard v. Laurens County, 265 Ga. 404, 405 (1995). Plaintiff has failed to identify any legislative act that waives the immunity of Putnam County in this action. Athens-Clarke County v. Torres, 246 Ga. App. 215, 216 (2000). Defendants sued in their official capacities, therefore, are immune from suit on Plaintiff's state law claim for intentional infliction of emotional distress.

Defendants are entitled to official immunity with respect to Plaintiff's claim for intentional infliction of emotional distress made against them in their individual capacities. Under Georgia law, official immunity offers limited protection to public officials and employees

from tort claims brought against them in their individual capacities. See Woodard, 265 Ga. at 406, 456; Gilbert, 264 Ga. at 750.  Official immunity applies in suits against county employees acting in their individual capacities for discretionary acts performed within the scope of their public duties, as long as those discretionary acts were performed "without malice." See Coffey v. Brooks County, 231 Ga. App. 886, 888 (1998), rev'd on other grounds,  Rowe v. Coffey, 270 Ga. 715, 715-716 (1999).

Employment decisions are discretionary acts. See, e.g., Hackett v. Fulton County Sch. Dist., 238 F. Supp. 2d 1330 (N.D. Ga. 2002); Davis v. DeKalb County Sch. Dist., 996 F. Supp. 1448 (N.D. Ga. 1998).  There is no evidence anyone involved with the decision to eliminate the Traffic Maintenance position acted with malice towards Plaintiff.  In fact, Defendants tried to put Plaintiff in another position when he changed his mind about returning to work.  Absent a showing of a deliberate intent to do wrong or cause harm to Plaintiff, Defendants are entitled to official immunity. Murphy v. Bajjani, 282 Ga. 197, 203 (2007).  As such, Plaintiff's claim against Defendants in their individual capacities is barred.

Even if Defendants were not protected by the doctrines of sovereign and official immunity, Plaintiff's claim could not survive summary judgment.  To plead a claim for intentional infliction of emotional distress in Georgia, Plaintiff must show that: 1) Defendant engaged in conduct that was intentional or reckless; 2) the conduct was also extreme and outrageous; 3) there was a causal connection between the wrongful conduct and Plaintiff's alleged emotional distress; and 4) the emotional distress is severe. Phinazee v. Interstate Nationalease, Inc., 237 Ga. App. 39 (1999).

Plaintiff has not produced evidence to indicate that Defendants actions were extreme or

outrageous. The fact of termination–even for improper reasons–is not the kind of egregious conduct that gives rise to a claim of intentional infliction of emotional distress. Beck v. Interstate Brands Corp., 953 F.2d 1275, 1276 (11th Cir. 1992). As a result, Plaintiff's claim for intentional infliction of emotional distress fails.

## CONCLUSION

For the reasons explained above, Defendants' Motion for Summary Judgment is **GRANTED**.

**SO ORDERED,** this 14th day of September, 2010.

S/ C. Ashley Royal
C. ASHLEY ROYAL, JUDGE
UNITED STATES DISTRICT COURT

THC/chw